**CHRISTOPHER MICHAEL CALLAWAY**
Debtor, In Pro Per
2489 15th Street
San Francisco, CA 94114
Telephone: (415) 802-6160
Email: chris1callaway@gmail.com

FILED
APR 07 2026
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In Re:<br>CHRISTOPHER MICHAEL CALLAWAY,<br>Debtor. | Case No. 24-30082 (DM)<br>Chapter 7<br>Adv. Proc. No. 26-03016 |
| CHRISTOPHER MICHAEL CALLAWAY,<br>Plaintiff,<br>v.<br>CITY AND COUNTY OF SAN FRANCISCO,<br>Defendant. | **DECLARATION OF CHRISTOPHER MICHAEL CALLAWAY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: April 24, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 17<br>450 Golden Gate Ave.<br>San Francisco, CA<br>Judge: Hon. Dennis Montali |

I, Christopher Michael Callaway, declare under penalty of perjury under the laws of the United States as follows:

**1.** I am the Plaintiff in this adversary proceeding and the debtor in the main bankruptcy case, No. 24-30082-DM. I make this declaration based on my personal knowledge and in support of my Motion for Preliminary Injunction. If called as a witness, I could and would competently

testify to the matters stated herein.

**Background**

**2.** I am San Francisco's first equity cannabis dispensary permit recipient. I have participated in the City's Cannabis Equity Program since its inception. My original permit interest was subsequently sold in this bankruptcy for a fraction of its value. I am now seeking to rebuild through new applications within the same program.

**3.** I have operated cannabis businesses through Caliverde LLC and The Van Ness Bureau LLC and have pursued cannabis permits at 928 Van Ness Avenue, 542 Laguna Street, 19 Maiden Lane, and 724 Valencia Street.

**4.** On February 12, 2024, I filed a voluntary petition for relief under Chapter 7 of Title 11 in this Court.

**OOC Processed My Applications for Sixteen Months After Filing**

**5.** For approximately fourteen months after my bankruptcy filing, from February 2024 through approximately April 2025, the Office of Cannabis continued to process my cannabis applications without imposing any bankruptcy-related hold.

**6.** During this same period, the City Attorney's Office approved my participation in two rounds of GO-Biz cannabis equity grants: Round 4 in approximately April 2024 and Round 5 in approximately April 2025. Both grant agreements contained insolvency default provisions the City chose not to invoke.

**7.** OOC also facilitated my transfer of cannabis retail applications to new locations during this period without raising any bankruptcy-related objection. I invested substantial capital in reliance on those transfers.

**Three Written Communications Conditioning Processing on Bankruptcy Status**

**8.** On May 13, 2025, OOC official Scott Dennis sent me an email regarding my 542 Laguna Street application, subject line "542 Laguna Application Update." The email confirmed that my


Case: 26-03016 Doc# 17 Filed: 04/07/26 Entered: 04/07/26 16:41:33 Page 2 of 6

submitted materials had passed the Informal Zoning Check but stated that before moving forward, OOC was requesting an update on my ongoing bankruptcy case. A true and correct copy of this email is attached hereto as Exhibit A.

**9.** On February 17, 2026, OOC official Jeremy Schwartz responded to my request to transfer the Caliverde LLC retail license from 928 Van Ness Avenue to a new location. Schwartz stated in writing that my "applications are in a holding pattern due to the bankruptcy proceeding and status of your entities." A true and correct copy of this email is attached hereto as Exhibit B.

**10.** On March 2, 2026, OOC official Ray Law sent me an email explicitly conditioning the processing of my cannabis business applications on my bankruptcy status. The email stated, in substance, that OOC could not process my applications while a bankruptcy case was pending. A true and correct copy of this email is attached hereto as Exhibit C.

**11.** None of these three communications cited a public safety concern, a regulatory deficiency, a zoning issue, or any other non-bankruptcy-related basis for refusing to process my applications.

**The Abandonment Order and My Immediate Efforts to Activate**

**12.** On December 19, 2025, this Court entered an order abandoning the remaining assets of my bankruptcy estate, including my cannabis business entities and applications. A true and correct copy of this order is attached hereto as Exhibit D.

**13.** On January 2, 2026, fourteen days after the abandonment order, I sent formal activation letters to OOC for each of my cannabis applications, requesting that processing resume immediately. True and correct copies of these letters are attached hereto as Exhibit E.

**14.** On February 5, 2026, I emailed OOC to initiate the process of transferring the Caliverde LLC retail license from 928 Van Ness Avenue to a new location.

**15.** On March 13, 2026, this Court granted my motion to define the scope of the abandonment, confirming that all disclosed assets of the estate had been abandoned. At the same hearing, the Court denied the creditor's motion to stay proceedings. A true and correct copy of the Court's


Case: 26-03016 Doc# 17 Filed: 04/07/26 Entered: 04/07/26 16:41:33 Page 3 of 6

order is attached hereto as Exhibit F.

**16.** Despite the abandonment order, the scope ruling, and the denial of the stay, OOC continued to refuse to process any of my applications or administrative requests until the filing of this adversary proceeding. For the entirety of the hold period, I took every step available to me to activate my assets and move my applications forward. Each effort was blocked by OOC solely on the basis of my bankruptcy status.

**Irreparable Harm**

**17.** The freeze has already caused the loss of my cannabis entitlement at 19 Maiden Lane. I spent approximately five years navigating the portability process to relocate a cannabis retail application to that location. On January 23, 2026, OOC denied the application based on a claimed geographic conflict with an expired medical cannabis dispensary permit that had been inactive for approximately two years. Nothing in Planning Code Section 202.2 supports the position that an expired medical cannabis dispensary permit triggers the 600-foot buffer against a new cannabis retail application. OOC and the Planning Department have required me to obtain a letter of determination from the Zoning Administrator to challenge this interpretation, a time-consuming and cost-prohibitive process that effectively shifts the burden onto the applicant to compel city employees to correctly apply their own code. While OOC selectively denied this application, it simultaneously held my other applications in abeyance, ensuring that no path forward was available to me at any location.

**18.** On March 17, 2026, the Board of Supervisors introduced legislation to create cannabis cafe permits. The proposed ordinance would exempt cafe licenses from the existing 600-foot buffer zone that currently separates cannabis retail establishments. This exemption would allow competing operators, including those associated with adverse parties in my bankruptcy proceeding who own properties in the vicinity of my pending application locations, to establish cannabis businesses in immediate proximity to my entitled locations. Because OOC would not process my applications during the hold, I could not achieve existing-retailer status and will be excluded from the initial phase of any cafe licensing program if the ordinance is enacted.

**19.** Under the 600-foot buffer rule of Planning Code Section 202.2(a)(5)(B), cannabis retail applications are effectively timestamped. Each day the freeze continues, my geographic positions are at risk of being permanently preempted by competing applications.

**20.** On April 2, 2026, within approximately 24 hours of the filing of this adversary proceeding, the OOC resumed processing my applications at 320 Kearny Street, 542 Laguna Street, and 724 Valencia Street. No explanation was provided for the timing of this decision. But the damage of the ten-month hold cannot be undone by lifting it. The hold, combined with the coordinated campaign among the adverse creditor in my bankruptcy proceeding, his co-counsel, and the obstruction by OOC and the City Attorney's Office, has effectively stripped me of business opportunities that I spent years securing through the City's own equity program.

**21.** Moreover, even after lifting the hold, OOC has not simply resumed processing my applications where they left off. OOC has stated that to resume processing applications that were already formally referred to the Planning Department, I would need to update OOC with additional required information. Providing some of this information may be complicated by the pending litigation in state court involving one of my application locations. Rather than allowing me to reorganize my businesses and move forward, OOC has imposed new administrative conditions that effectively extend the consequences of the hold beyond its formal duration.

**22.** The harm I am suffering cannot be compensated by money damages. The loss of geographic position, the loss of first-mover advantage, the loss of the 19 Maiden Lane entitlement, and the loss of the cannabis cafe opportunity are irreversible. Each day of delay compounds the harm.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 7, 2026, at San Francisco, California.



Case: 26-03016 Doc# 17 Filed: 04/07/26 Entered: 04/07/26 16:41:33 Page 5 of 6

Respectfully submitted,

**CHRISTOPHER MICHAEL CALLAWAY**

Plaintiff, In Pro Per