**CHRISTOPHER MICHAEL CALLAWAY**
2489 15th Street
San Francisco, California 94114
Telephone: (415) 802-6160
Email: chris1callaway@gmail.com
In Pro Per

FILED

MAY 1 4 2026

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: | **Case No. 24-30082** |
| | **Chapter 7** |
| CHRISTOPHER MICHAEL CALLAWAY, | |
| Debtor. | **Adv. Proc. No. 26-03016** |
| CHRISTOPHER MICHAEL CALLAWAY, | **FIRST AMENDED COMPLAINT** |
| | **FOR VIOLATION OF** |
| Plaintiff, | **11 U.S.C. § 525(a);** |
| | **DAMAGES; DECLARATORY** |
| | **AND STRUCTURAL RELIEF** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | **Hearing: May 29, 2026,** |
| | **10:00 a.m., Ctrm. 17,** |
| | **Hon. Dennis Montali** |
| Defendant. | |

## I. INTRODUCTION

1. Plaintiff Christopher Michael Callaway files this First Amended Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B), made applicable in adversary proceedings through Federal Rule of Bankruptcy Procedure 7015. This pleading is filed within twenty-one days of

Case No. 24-30082
Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT

service of the Motion to Dismiss filed by the City and County of San Francisco on May 1, 2026, and supersedes the original Complaint at Docket No. 1.

2. Three written communications from three San Francisco Office of Cannabis officials, transmitted over ten months, condition the processing of Plaintiff's cannabis equity applications on his bankruptcy. Senior Analyst Scott Dennis on May 13, 2025: "Before moving forward, we are requesting an update on your ongoing bankruptcy case." Senior Analyst Jeremy Schwartz on February 17, 2026: Plaintiff's applications are "in a holding pattern due to the bankruptcy proceeding and status of [his] entities." Senior Analyst Ray Law on March 2, 2026: "The ongoing status of [Plaintiff's] bankruptcy proceeding impacts the OOC's abilities to process [his] applications." The City's Motion to Dismiss does not deny these communications. It re-characterizes them. That re-characterization is the precise defense binding Ninth Circuit authority forecloses.

3. In re Wike, 660 B.R. 683 (B.A.P. 9th Cir. 2024), aff'd, No. 24-4402 (9th Cir. July 31, 2025), applied F.C.C. v. NextWave Personal Communications Inc., 537 U.S. 293 (2003), to hold that "under binding Supreme Court authority, a governmental entity's regulatory motive is not a relevant consideration for purposes of Section 525(a) and, as a result, cannot serve as a basis for denial of a claim under the statute." 660 B.R. at 694-95. The City's Motion to Dismiss does not cite Wike. The Motion's central theory is that San Francisco Police Code Section 1606(c)(1) supplied a non-bankruptcy ownership-uncertainty rationale that defeats the "solely" element of Section 525(a). That is the regulatory-motive defense Wike forecloses.

4. The City's defense is not only legally foreclosed. It is contradicted by the City's own contemporaneous conduct. During the same period the City now contends ownership of Plaintiff's entities was too uncertain to allow permit processing, the City executed multiple cannabis equity grant agreements with Plaintiff's entity Caliverde LLC, with Plaintiff as the authorized principal signatory, and disbursed public funds. Senior Analyst Jeremy Schwartz, one of the three OOC officials who later named the bankruptcy as the cause of the hold, executed an upward amendment of the GO-Biz Round 5 grant to $86,403.55. Deputy City

Case No. 24-30082
Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT

2

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 2 of 34

Attorney Sarah Crowley signed the amendment as approved as to form on behalf of the same City Attorney's Office that has now filed the Motion to Dismiss. The City transacted with Plaintiff as the 100%-controlling principal of Caliverde during the exact period it now claims ownership of that entity was too uncertain for permit processing. Both positions cannot be true. The well-pleaded inference is that the asserted ownership-uncertainty rationale is pretextual.

4A. The bankruptcy in which the City grounds its defense was not an independent event. Plaintiff's bankruptcy arose directly from the loss of his commercial tenancy at 500-528 Laguna Street, a tenancy structurally compromised by the work of Rodrigo Santos, a structural engineer who pulled permits across San Francisco during the relevant period and was subsequently the subject of City civil enforcement action resulting in a recovery of $1,425,044.03. The City's enforcement record establishes that the Santos misconduct chain included the 500-528 Laguna seismic retrofit. The City's institutional failures of permitting oversight at 500-528 Laguna, including the issuance of permits to Santos during a period of known indictment exposure, the absence of follow-up on a 2019 correction notice, and the expiration of the retrofit permits without final inspection, are the upstream cause of the bankruptcy the City now invokes as its justification for refusing to process Plaintiff's permit applications. The City's defense, on its own logic, asks this Court to insulate OOC's discrimination by reference to a bankruptcy the City's own institutional failures helped create.

5. Plaintiff seeks: (a) compensatory damages for crystallized losses sustained during and after the hold period, including the permanent extinguishment of the 19 Maiden Lane entitlement on January 23, 2026, carrying costs at the application locations, exclusion from cannabis equity grant rounds, foreseeable exclusion from the cannabis cafe licensing program adopted March 16, 2026, and lost business opportunities; (b) declaratory relief that the City's administration of Plaintiff's applications violated, and continues to violate, Section 525(a); and (c) structural relief under the remedial scope of Section 525(a), this Court's authority under 11 U.S.C. Section 105(a), and 28 U.S.C. Sections 2201 and 2202, directing the City to develop and publish a written policy governing the treatment of equity applicants who are or have been debtors under Title 11, consistent with Section 525(a). The Court denied preliminary injunctive

Case No. 24-30082

Adv. Proc. No. 26-03016      FIRST AMENDED COMPLAINT

3

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 3 of 34

relief on April 27, 2026, after the hold had been lifted. Plaintiff does not re-plead injunctive relief on the past conduct.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. Sections 1334(a), (b), and 157(b)(1). This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A) and (O). It arises under Title 11 and involves the enforcement of 11 U.S.C. Section 525(a). See In re Wike, 660 B.R. 683, 696 (B.A.P. 9th Cir. 2024) (Section 525(a) action is a core proceeding because it arises under a substantive provision of the Bankruptcy Code).

7. Venue is proper in this district under 28 U.S.C. Sections 1408 and 1409(a). The main bankruptcy case, No. 24-30082-DM, is pending in this Court. Plaintiff consents to the entry of final orders and judgment by this Court.

## III. PARTIES

8. Plaintiff Christopher Michael Callaway is an individual residing in San Francisco, California. Plaintiff is the debtor in the Chapter 7 bankruptcy case captioned In re Christopher Michael Callaway, Case No. 24-30082-DM. Plaintiff appears in pro per.

9. Defendant City and County of San Francisco is a municipal corporation organized under the laws of the State of California. The City is a "governmental unit" within the meaning of 11 U.S.C. Sections 101(27) and 525(a). The City operates the Office of Cannabis ("OOC"), a division within the Office of the City Administrator, which issues cannabis business permits and administers the Cannabis Equity Program under San Francisco Police Code Article 16. The City also operates the Planning Department, the Department of Building Inspection, and the Office of the City Attorney, each of which is referenced in this Complaint as part of the integrated administrative apparatus through which the conduct alleged herein was undertaken. All such conduct was undertaken by the City through its officers, employees, and agents acting within the scope of their authority.

10. Senior Analyst Scott Dennis, Senior Analyst Jeremy Schwartz, and Senior Analyst Ray Law are employees of the Office of Cannabis. They are identified in this Complaint as the

Case No. 24-30082
Adv. Proc. No. 26-03016    FIRST AMENDED COMPLAINT    4

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 4 of 34

authors of three written communications conditioning the processing of Plaintiff's applications on the existence or resolution of his bankruptcy case. They are not named as defendants. The conduct alleged is the City's conduct, undertaken through its employees in the scope of their City employment.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Status in the Cannabis Equity Program

11. Plaintiff is the first recipient of a cannabis equity dispensary permit issued in San Francisco. Plaintiff opened Eureka Sky, the first equity dispensary in the City. Through his entities, Plaintiff has opened and operated cannabis businesses at multiple locations under the Cannabis Equity Program and has participated continuously in the Program since its inception. Plaintiff is the longest-tenured equity operator in the program.

12. As of the bankruptcy petition date, Plaintiff held or was the equity applicant of record for an active permit at 928 Van Ness Avenue operating through Caliverde LLC, and for pending applications at 542 Laguna Street, 724 Valencia Street, 320 Kearny Street, and a portability application then assigned to 597 Hayes Street (later ported to 19 Maiden Lane in May 2025).

### B. The Origin of Plaintiff's Bankruptcy: The Santos Misconduct Chain at 500-528 Laguna Street and the City's Institutional Failures of Oversight

12A. Plaintiff's bankruptcy did not arise in isolation. It arose from the financial consequences of the loss of his commercial tenancy at 500-528 Laguna Street, a tenancy structurally compromised by the work of Rodrigo Santos. Santos was a registered structural engineer who pulled construction permits across San Francisco during the period relevant to this action. The City and County of San Francisco pursued civil enforcement against Santos for a pattern of permit-inspection misconduct, and recovered $1,425,044.03 by settlement. The Santos civil settlement agreement was produced to Plaintiff in discovery in the related adversary proceeding and is a public record of the City's adjudication of Santos's misconduct. The Santos recovery is the City's own determination of the value of the damages Santos caused to those who relied on the integrity of the City's permitting and inspection system.

Case: 26-03016     Doc# 28     Filed: 05/14/26     Entered: 05/14/26 17:09:16     Page 5 of 34

12B. The Santos misconduct chain included the seismic retrofit at 500-528 Laguna Street, where Plaintiff operated his prior cannabis retail business. Santos was permitted to file structural drawings for the 500-528 Laguna retrofit during the same period the City was pursuing its civil enforcement action against him. The City's then-Director of the Department of Building Inspection, Tom Hui, who was himself subsequently removed from office and found by the City Attorney's Office to have violated City law in connection with corruption at DBI, stamped Santos's drawings at 500-528 Laguna. The retrofit work substituted concrete shear walls for the steel moment frame called for in the original specifications, blocking the storefront windows of Plaintiff's tenancy. The City issued a correction notice on the Santos work at 500-528 Laguna in 2019 and failed to pursue follow-up. The retrofit permits at 500-528 Laguna expired on December 29, 2023 without final inspection. The City has not, to date, reviewed the architectural drawings necessary to determine whether the retrofit work as actually performed satisfies the seismic standards the retrofit was permitted to address.

12C. The City's institutional failures of oversight at 500-528 Laguna are the upstream cause of Plaintiff's bankruptcy. The structurally compromised tenancy that resulted from the Santos work, and the City's failure to require remediation of that work, became the operative facts giving rise to the $1,425,044.03 proof of claim filed against Plaintiff in his bankruptcy by the owner of 500-528 Laguna Street. The dollar parity between the City's Santos recovery and that proof of claim, identical to within four dollars, reflects the traceability of the harm and is not coincidence. The bankruptcy on which the City now grounds its Section 525(a) defense, and the financial consequences of that bankruptcy that the City's permitting-side discrimination has compounded, are the downstream effects of the City's own institutional permitting failures. The City asks this Court to insulate OOC's discrimination by reference to a bankruptcy the City's institutional failures helped create.

**C. The Article 16 Non-Transferability Framework Forecloses the City's Ownership-Uncertainty Defense as a Matter of Structural Design**

13. The Cannabis Equity Program was established under San Francisco Police Code Article 16 to direct cannabis industry participation to individuals from communities disproportionately

Case 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 6 of 34

affected by the prohibition era. The Program defines eligibility by personal criteria attaching to the applicant. Police Code Section 1604(b)(3) sets the ownership criteria for equity applicants. Police Code Section 1606(c) establishes the priority processing framework. Police Code Section 1608 restricts transfers, changes in ownership, and changes in operational control.

14. Cannabis equity applications are not transferable. The equity criteria of Police Code Section 1604(b)(3) are personal to the applicant, and Article 16 provides no mechanism by which an unprocessed equity application can be conveyed or assigned to any third party. The application is keyed to the verified equity applicant, and the applicant identity itself cannot be substituted. Police Code Section 1608(c)(3) requires any change in the direction, control, or management of a cannabis business to be promptly disclosed and to be accompanied by a permit amendment. The Program is structured to ensure that equity opportunities remain with the verified equity applicant who applied for them, and are not separable from the applicant by entity-level sale, by bankruptcy disposition, or by any other mechanism.

15. These structural features are dispositive of the trustee-control defense the City raises in its Motion to Dismiss. The Chapter 7 trustee in Plaintiff's bankruptcy case could not have transferred Plaintiff's cannabis equity applications to any third party. The applications were not transferable. Whatever entity-level control the trustee exercised during the pendency of the bankruptcy could not have produced a transfer of the underlying applications. Article 16 is the City's own ordinance. The City's asserted concern about ownership uncertainty during trustee control is, on the City's own rules, a concern about a transfer that could not have occurred. The City's Motion to Dismiss at footnote 6 quotes Plaintiff's own motion for the proposition that these applications "cannot be transferred, sold, or assigned" and any "ownership change at the entity level risks voiding the applications entirely." That admission is correct. It is also the complete answer to the City's defense. If applications cannot be transferred at the entity level under Article 16, then the Chapter 7 trustee's intervening control of estate-level membership interests created no transfer concern actionable by OOC. The asset that ostensibly changed hands was, on the City's own ordinance, an asset incapable of changing hands. The defense collapses on its own premise.

Case No. 24-30082
Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT

7

Case 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 7 of 34

15A. The City's Section 1606(c)(1) defense is structurally narrower than the conduct it must justify. Section 1606(c)(1) governs the priority of processing among equity applicants, that is, whether an applicant is first-priority, second-priority, or third-priority for OOC review. It does not govern whether processing occurs at all. Even if the trustee's intervening control had reduced Plaintiff's applications from first-priority to second-priority or third-priority status under Section 1606(c), the permitted regulatory response would have been a priority reassignment, not a total processing freeze. The freeze actually imposed treated Plaintiff's applications as ineligible rather than reprioritized. No provision of Article 16 authorizes a non-processing remedy on first-priority demotion grounds. Section 1606(c)(1), on the City's own ordinance, does not reach the conduct the City is now asked to justify.

**D. Fifteen Months of Routine Processing After Written Notice of the Bankruptcy**

16. On February 12, 2024, Plaintiff filed a voluntary petition under Chapter 7. The bankruptcy arose out of disputes connected to Plaintiff's prior commercial tenancy at 500-528 Laguna Street.

17. On January 22, 2024, three weeks before the petition date, Plaintiff emailed OOC personnel Scott Dennis, Ray Law, Jeremy Schwartz, and the OOC general inbox, expressly stating that the inquiry was "highly time sensitive due to my impending bankruptcy," with Plaintiff's counsel copied. The email concerned the procedural mechanics of preserving permits in light of the impending bankruptcy. OOC had actual written notice of the impending bankruptcy from three weeks before the petition date and actual written notice of the filed bankruptcy from the petition date forward. OOC did not invite, and did not impose, any administrative hold in response, either pre-petition or post-petition.

18. On January 24, 2024, Scott Dennis responded substantively. Dennis walked Plaintiff through Police Code Section 1608 transfer rules, the five-year rule for Eureka Sky, and the 49.99 percent ownership restriction applicable to Caliverde at 928 Van Ness, and confirmed that both businesses could remain open during transitions. OOC raised no concern about the impending bankruptcy. OOC imposed no hold. OOC subsequently scheduled a Zoom meeting

Case No. 24-30082

Adv. Proc. No. 26-03016      FIRST AMENDED COMPLAINT

8

with Plaintiff for February 14, 2024, two days after the petition date, at which OOC continued substantive engagement on transfer mechanics without raising any bankruptcy-related concern.

19. From the petition date through April 2025, a period of approximately fifteen months, OOC processed Plaintiff's applications, communicated with Plaintiff about permitting, accepted fees, and executed administrative changes. OOC did not invoke Section 1606(c)(1) during that period. OOC did not invoke any "100 percent ownership" framework. OOC did not impose any bankruptcy-related hold. The trustee's control of estate property under Section 1606(c)(1) existed from the petition date forward. Article 16's non-transferability framework existed throughout. If either had been the operative concern, the hold would have been imposed on or shortly after the petition date. The fifteen-month silence forecloses the City's defense at the pleading stage. The well-pleaded inference is that the operative cause of the May 2025 hold was not a structural feature of the Article 16 framework that had been present throughout, but a change in circumstances that occurred in spring 2025.

**E. The Cannabis Equity Grant Agreements: The City's Own Contemporaneous Conduct Treated Plaintiff as the 100 Percent Owner of Caliverde During the Period the City Now Claims Ownership Was Too Uncertain**

20. During the same period the City now contends ownership of Plaintiff's entities was too uncertain to allow permit processing, the City executed multiple cannabis equity grant agreements with Plaintiff's entity Caliverde LLC and disbursed public funds under those agreements.

21. In April 2024, approximately seven weeks after the petition date, the Office of Cannabis Director and the City Attorney's Office executed Cannabis Equity Grant Agreement GO-Biz Round 4 with Caliverde LLC in the amount of $59,166.26. Plaintiff was the authorized signatory. The agreement was executed with no bankruptcy-based restriction on Plaintiff's role and with no condition tied to the pendency of the Chapter 7 case.

22. In April 2025, approximately one month before Scott Dennis would impose the administrative hold on Plaintiff's permit applications, OOC and the City Attorney's Office

Case No. 24-30082
Adv. Proc. No. 26-03016        FIRST AMENDED COMPLAINT

9

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 9 of 34

executed Cannabis Equity Grant Agreement GO-Biz Round 5 with Caliverde LLC. Plaintiff was again the authorized signatory.

23. In September 2025, nearly four months after the May 13, 2025 administrative hold was imposed citing Plaintiff's bankruptcy, the City and the City Attorney's Office executed the First Amendment to the GO-Biz Round 5 grant agreement with Caliverde LLC, amending the grant upward to $86,403.55. Plaintiff was again the authorized signatory. The First Amendment was sent for signature by Princess Bustos of the Office of Cannabis on August 21, 2025, voided and re-sent on August 28-29, 2025, and completed by all parties on September 3, 2025. Jeremy Schwartz, the same OOC official who would later, on February 17, 2026, tell Plaintiff that his applications remained on hold due to the bankruptcy and the status of his entities, signed the First Amendment on behalf of the Office of Cannabis. Deputy City Attorney Sarah Crowley signed the First Amendment as approved as to form on behalf of the City Attorney's Office, the same office that has now filed the Motion to Dismiss arguing ownership uncertainty.

23A. The City continued to administer the Caliverde grant through fall 2025. On August 28, 2025, the City sent Plaintiff notice of a Second Amendment to the grant agreement. Between September and October 2025, OOC processed multiple grant reimbursement requests addressed to "Grantee Caliverde LLC," with Plaintiff as the controlling principal. Princess Bustos of the Office of Cannabis transmitted grant reimbursement, certificate-of-insurance, and grant-amendment communications to Plaintiff as authorized signatory of Caliverde during this period. The City accepted Plaintiff as the controlling principal of Caliverde for purposes of binding grant agreements and grant administration during the same period the City has now told this Court that ownership of Caliverde was too uncertain to allow permit processing.

24. The eligible expense window for GO-Biz Round 5 spans July 2024 through June 2025, the period during which the City now contends ownership of Caliverde was too uncertain to allow permit processing.

25. The Office of Cannabis is one office. The City Attorney's Office is one office. The City accepted Plaintiff as the controlling principal of Caliverde for purposes of binding contracts,

Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 10 of 34

public-fund disbursement, and entity-level administrative changes during the same period it claims ownership of that entity was too uncertain for permit processing. Both positions cannot be true. Under Iqbal and Twombly, the well-pleaded inference at the Rule 12(b)(6) stage is that the asserted ownership-uncertainty rationale is pretextual.

**F. The Timing Context: Spring 2025**

26. Plaintiff alleges the following facts as causation evidence, not as motive evidence, and to explain the otherwise unaccountable fifteen-month silence between the petition date and the imposition of the administrative hold.

27. On February 6-7, 2025, the San Francisco Planning Commission voted unanimously to revoke the conditional use authorization for cannabis retail at 500-528 Laguna Street that had been held by Plaintiff's former landlord and creditor. The revocation removed the 600-foot buffer obstacle from Plaintiff's 542 Laguna application.

28. On March 19, 2025, Plaintiff submitted a Letter of Intent and Proof to Occupy for 724 Valencia Street to OOC, seeking to port one of his portability-eligible applications to that location. Senior Analyst Scott Dennis acknowledged receipt on March 21, 2025, and indicated that OOC would review the materials. On April 2, 2025, Plaintiff executed and transmitted the commercial lease for 724 Valencia Street to OOC, with the landlord countersigning on April 3, 2025. Plaintiff entered into the lease as the one hundred percent owner of the proposed cannabis retail business at that location, in reliance on his status as a verified equity applicant in good standing with a documented history of successful applications through OOC and on the expedited processing pathway available to a one hundred percent equity applicant with prior program experience. Plaintiff committed substantial capital, including non-refundable key money, in reliance on OOC's facilitation of the 724 Valencia application path.

29. On April 29, 2025, Scott Dennis transmitted a communication titled "RESPONSE REQUIRED: 10-Day Shot Clock Imposition Notice (542 Laguna St)" requiring Plaintiff to produce a Proof to Occupy at 542 Laguna within ten days.

30. Plaintiff complied. On May 8, 2025, Plaintiff submitted a signed Letter of Intent and Proof to Occupy for 542 Laguna. On May 12, 2025, OOC formally referred Plaintiff's 542 Laguna

Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 11 of 34

application to the Planning Department for substantive review. The OOC referral email stated: "The Office of Cannabis has determined Hazy Home located at 542 Laguna to be eligible to proceed with obtaining necessary permits and/or authorizations to operate."

31. On May 13, 2025, the day after OOC referred 542 Laguna to Planning, Scott Dennis emailed Plaintiff regarding the same 542 Laguna application. The email confirmed that Plaintiff's materials had passed Informal Zoning Check. Dennis then conditioned further processing on the bankruptcy: "Before moving forward, we are requesting an update on your ongoing bankruptcy case." The application had cleared substantive zoning review on May 12. The stated basis for halting its advancement on May 13 was Plaintiff's bankruptcy.

32. The administrative hold imposed on May 13, 2025 extended to Plaintiff's other pending applications, including 724 Valencia, 320 Kearny, and the portability application then assigned to 19 Maiden Lane. The hold continued through April 2, 2026, a period of nearly eleven months. The intervening events between April 1, 2025 and May 13, 2025, set out above, are the change in circumstances that the fifteen-month silence requires the City to explain.

**G. Three Written Communications Conditioning Processing on Bankruptcy Status**

33. OOC's discrimination is documented in three written communications from three separate OOC officials over a ten-month period. The City's Motion to Dismiss does not deny that these communications were sent. The Motion re-characterizes their content.

34. First. On May 13, 2025, Senior Analyst Scott Dennis emailed Plaintiff regarding the 542 Laguna application. After confirming that Plaintiff's materials had passed Informal Zoning Check, Dennis conditioned further processing on the bankruptcy. (Compl. Ex. A.) Dennis did not cite Police Code Section 1606(c)(1). Dennis did not invoke a "100 percent ownership" framework. Dennis did not invoke Section 1609(b)(25) or (27). Dennis cited the bankruptcy. The Motion to Dismiss contends that this email asks for "new information or guidance from the court concerning the ownership of the assets held under the bankruptcy" and that this language reflects "the City following" Section 1609(b)(27)'s ownership-disclosure requirement. The argument proves Plaintiff's case. Even on the City's preferred reading, the OOC tethered

Case No. 24-30082
Adv. Proc. No. 26-03016    FIRST AMENDED COMPLAINT

12
Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 12 of 34

processing of a routine 542 Laguna application to information from "the [bankruptcy] court." Tethering permit processing to bankruptcy-derived information about a debtor is the action Section 525(a) prohibits.

35. Second. On February 17, 2026, Senior Analyst Jeremy Schwartz emailed Plaintiff stating that Plaintiff's "applications are in a holding pattern due to the bankruptcy proceeding and status of [his] entities." (Compl. Ex. B.) The Schwartz email was sent two months after the December 19, 2025 abandonment order that the City now relies on as the operative "ownership clarification" event. The City's Motion to Dismiss reads the conjunctive phrase "the bankruptcy proceeding and status of [his] entities" as defeating the "solely" element of Section 525(a). The reading collapses on inspection. The "status of [his] entities" Schwartz references is the bankruptcy-derived status of those entities during the trustee's administration. It is not a non-bankruptcy status. Uncertainty about which estate-versus-non-estate assets were abandoned in the bankruptcy is itself a bankruptcy-derived uncertainty; the City cannot defeat the "solely" element by pointing to a downstream consequence of the bankruptcy filing. NextWave forecloses precisely this move. 537 U.S. at 301-04. Schwartz's own September 2025 signature on the Caliverde First Amendment grant agreement forecloses any contention that the entity status was separately problematic on non-bankruptcy grounds: the same official, four months after the bankruptcy-based hold was imposed, signed a binding contract with Plaintiff as the authorized principal of the same entity. The differential treatment between the grant track and the permit track has one explanation: the permit track was halted because of the bankruptcy.

36. Third. On March 2, 2026, Senior Analyst Ray Law emailed Plaintiff stating: "The ongoing status of [Plaintiff's] bankruptcy proceeding impacts the OOC's abilities to process [his] applications." (Compl. Ex. C.) The Law email was sent more than ten weeks after the December 19, 2025 abandonment order. The Law email names the bankruptcy directly. The City's Motion to Dismiss contends this language reflects compliance with Section 1606(c)(1)'s 100-percent-ownership requirement. The email does not cite Section 1606(c)(1). The email does not invoke any ownership framework. The email cites the bankruptcy.

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 13 of 34

37. A fourth written communication, OOC's January 28, 2026 email, identifies the operative decision-making process. OOC wrote: "These applications (320 Kearny, 542 Laguna, 724 Valencia) are still not progressing as our office awaits guidance from our City partners concerning your ownership over the entity 'Van Ness Bureau, LLC.'" The "ownership" the email references is the ownership status of an entity then administered by the bankruptcy estate. Read against Schwartz's September 2025 First Amendment execution with Plaintiff as the controlling principal of Caliverde, the City Partners' purported "guidance" on Van Ness Bureau ownership is the same bankruptcy-derived ownership inquiry the City has applied selectively across Plaintiff's entities. The "City partners" referenced are an unidentified decision-making body within the City. OOC's deference to this unidentified body is, on OOC's own statement, the operative cause of the continued non-processing. The Motion to Dismiss does not address the City Partners email. The identities of the "City partners," the dates of any guidance they provided, and the substance of any communications between OOC and those partners concerning Plaintiff are facts within the City's exclusive control and have not been produced. Inferences at the pleading stage run in Plaintiff's favor on documents within the defendant's exclusive control.

**H. The 19 Maiden Lane Extinguishment**

38. In October 2024, Plaintiff submitted a portability request under Police Code Section 1606(c)(7) to port his 597 Hayes Street application to a new location. OOC approved the portability request in November 2024 and set a deadline of May 2, 2025 for submission of Proof to Occupy at a new project address.

39. On May 2, 2025, the deadline day, Plaintiff submitted a Letter of Intent for 19 Maiden Lane, a vacant Union Square storefront that had been empty for approximately seven years.

40. On November 6, 2025, OOC informed Plaintiff that the 19 Maiden Lane portability request would be rejected under Section 1606(c)(7) because the Cannabis Retail Storefront Map showed the property as within 600 feet of the 49 Kearny entitlement. The 49 Kearny entitlement was a former Medical Cannabis Dispensary ("MCD") operating on an upper floor and never converted to an Article 16 adult-use permit. The California state cannabis license for

Case: 26-03016   Adv. Proc. No. 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 14 of 34

the 49 Kearny MCD had expired in July 2023. Under Police Code Section 1608(b), an unrenewed MCD entitlement is retained for an 18-month retention period and lapses thereafter. The retention period on the 49 Kearny entitlement had accordingly lapsed by approximately January 2025, four months before Plaintiff's May 2, 2025 Letter of Intent for 19 Maiden Lane.

41. On December 19, 2025, this Court entered the order abandoning the remaining estate assets back to Plaintiff. Ownership of the cannabis assets revested in Plaintiff. On December 18, 2025, the day immediately preceding the abandonment order, the President of the United States issued an executive order directing the Attorney General to expedite the rescheduling of marijuana from Schedule I to Schedule III under the Controlled Substances Act. The concurrence of the federal rescheduling directive and the abandonment order created a defined window in which California cannabis operators repositioned applications and operations to capture the anticipated regulatory and market changes. Immediately upon entry of the abandonment order, Plaintiff sought to move his pending cannabis retail applications forward and to reinitiate substantive engagement with OOC concerning the deployment of grant funds, the renegotiation of lease terms, the resolution of state tax obligations, and the procedural steps necessary to navigate the changing federal landscape. OOC denied each such substantive request for meetings or information.

42. On January 23, 2026, OOC denied the 19 Maiden Lane portability request. The Notice of Denial, attached to the Motion to Dismiss as Exhibit A to the Declaration of Ray Law, recites the 49 Kearny buffer rule and a Letter-of-Determination deadline as the stated grounds. Two independent factual predicates undercut the Notice on its face. First, the 49 Kearny entitlement that the Notice treats as "previously vested" had lapsed under Section 1608(b) approximately four months before Plaintiff's May 2, 2025 Letter of Intent. OOC applied an entitlement that, under the City's own ordinance, did not exist at the relevant time. Second, the LOD-deadline failure was rendered self-fulfilling by OOC's bankruptcy-based hold on Plaintiff's other applications. OOC chose to act adversely on a contested land-use question on January 23, 2026, during the same window in which it would not act on Plaintiff's uncontested applications under the bankruptcy-based hold. The denial issued five weeks after the abandonment order

Case No. 24-30082

Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT     15

Case: 26-03016     Doc# 28     Filed: 05/14/26     Entered: 05/14/26 17:09:16     Page 15 of 34

and sixteen days after Plaintiff's candid telephone disclosure to Scott Dennis on January 7, 2026 concerning his ongoing capital-partner discussions. The 19 Maiden Lane position cannot be recovered or replicated.

**I. Post-Abandonment Continuation of the Hold and the Twenty-Four-Hour Lift After Service**

43. If trustee control of estate property had been the operative concern, the hold should have lifted on December 19, 2025 when this Court entered the abandonment order. It did not. The hold continued for more than three additional months. The Motion to Dismiss at footnote 7 contends that the City lifted the hold within ten business days of this Court's March 19, 2026 order clarifying the scope of abandonment. The contemporaneous record contradicts the City's chronology. The March 19, 2026 order issued fourteen calendar days before the City lifted the hold. The City had approximately two weeks between March 19 and April 1 to lift the hold on the chronology its own footnote 7 now advances. It did not. The hold was lifted on April 2, 2026, within twenty-four hours of service of the original Complaint in this action on April 1, 2026. The hold was not lifted in response to any abandonment order. It was lifted in response to the filing of this action. The April 2, 2026 communication, for the first time, reframed the hold as having been imposed due to entity ownership during bankruptcy. That reframing is post hoc. None of the three predicate communications had invoked entity ownership as the operative cause.

43A. The pattern between December 19, 2025 and April 2, 2026 was a cascading demand for additional judicial orders. Following the December 19, 2025 abandonment order, OOC did not lift the hold and instead indicated that further clarification was required. Plaintiff sought and obtained the March 13, 2026 order defining the scope of abandonment. OOC did not lift the hold and instead indicated that further clarification was required. The March 19, 2026 order followed. OOC did not lift the hold. The hold lifted only after Plaintiff filed and served the original Complaint in this action on April 1, 2026. Each procedural milestone Plaintiff achieved was met with the demand for the next one. The use of cascading clarification requests

Case No. 24-30082

Adv. Proc. No. 26-03016       FIRST AMENDED COMPLAINT

16

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 16 of 34

as the operational basis for sustained non-processing is itself conduct within Section 525(a)'s operative verbs. The conduct conditioned the grant of permits on the production of additional bankruptcy-related documentation indefinitely, discriminated with respect to the grant by tethering processing to bankruptcy-derived information, and effectively denied the grant by maintaining the freeze regardless of any abandonment-related milestone Plaintiff achieved.

**J. The Continuing Post-April-2 Violation: Four Particularized Withheld Administrative Actions**

44. The April 2, 2026 lift did not end the discrimination. Following the lift, the City has obstructed routine administrative processing of Plaintiff's pending requests through a new pattern of conduct distinct from the administrative hold but identical in operational effect. The post-April-2 conduct post-dates the Court's April 27, 2026 ruling denying preliminary injunctive relief. The Court's April 27 ruling addressed the pre-April-2 administrative hold, which had been lifted before the ruling. The post-April-2 conduct is not the same conduct. It is distinct in time, in form, and in administrative label. It is conduct on which the Court has not previously ruled.

45. First withheld action: the Caliverde LLC "Doing Business As" change to MotaCity. On approximately March 24, 2026, Plaintiff filed a Fictitious Business Name statement for Caliverde LLC operating as "MotaCity." Plaintiff transmitted the FBN documentation to OOC and requested OOC processing of the DBA change against the active permit at 928 Van Ness. As of the date of this First Amended Complaint, OOC has not processed the DBA change. Other equity operators processing analogous DBA changes through OOC have received processing within standard timelines. Plaintiff has received no substantive response.

46. Second withheld action: the Caliverde LLC license relocation request. Plaintiff submitted a relocation request to OOC for the 928 Van Ness license, identifying the parameters of the request and requesting OOC guidance on the procedural steps required under Police Code Section 1606(c)(7) for the existing-retailer relocation pathway. As of the date of this First Amended Complaint, OOC has not processed the relocation request and has not responded substantively to Plaintiff's procedural inquiries.

Case No. 24-30082

Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT     17

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 17 of 34

47. Third withheld action: substantive engagement on the procedural pathway for application advancement. Plaintiff has communicated with potential investors who have expressed hesitation moving forward while OOC has not provided clarity on Plaintiff's ability to advance his applications. Advancement of the 542 Laguna and 724 Valencia applications requires capital. Capital partners are reluctant to commit terms in the absence of either a resolution of Plaintiff's bankruptcy with respect to the cannabis assets or a defined OOC processing timeline. OOC has refused to engage substantively on either condition. Plaintiff is not seeking discretionary favorable treatment. Plaintiff is seeking the processing of administrative requests according to published criteria applied to all applicants without distinction based on bankruptcy status, which is the precondition prospective capital partners have reasonably required.

48. Fourth withheld action: the OOC grants team conference. Plaintiff has requested a conference with the OOC grants team to address how cannabis equity grant funds may be deployed for Caliverde operations and to address the status of pending grant rounds for which Plaintiff's entities qualified or would have qualified. As of the date of this First Amended Complaint, OOC has not scheduled the conference. The withholding of substantive engagement is part of a broader pattern. For approximately the year preceding the filing of the original Complaint, OOC declined to schedule substantive meetings with Plaintiff to address the status of his applications, the deployment of grant funds, or routine administrative inquiries. The single substantive engagement OOC initiated during the hold period was the conversation concerning the 19 Maiden Lane Letter of Determination, in which OOC's posture was directed at moving Plaintiff's portability application toward termination rather than toward approval. The asymmetry, that OOC was available to engage when engagement served the closure or termination of an application but unavailable when engagement would have facilitated the advancement of an application, is itself evidence of discriminatory administration.

49. Circular Planning-OOC referral pattern at 542 Laguna. Following the April 2, 2026 lift, Plaintiff sought to advance the 542 Laguna application that OOC had referred to Planning on May 12, 2025 and then held the following day. The Planning Department has referred Plaintiff

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 18 of 34

back to OOC. OOC has indicated that the application awaits guidance from "our City partners." The application is, in operational terms, frozen. Each step Plaintiff takes to advance the application is met with a referral back to the office that referred him in the prior step. The operational effect is identical to the pre-April-2 hold. The regulatory label has changed; the regulatory outcome has not.

50. Each of the four withheld administrative actions is identifiable, current, and within OOC's exclusive control. The cause of the differential treatment is Plaintiff's bankruptcy status, now operating through the unidentified "City Partner guidance" framework. Each withheld action constitutes a refusal to process, a conditioning of processing, and a discrimination with respect to a grant within the meaning of Section 525(a), and falls within the statute's operative verbs of "deny," "suspend," "condition," and "discriminate with respect to" a license, permit, or similar grant. Each withheld action is a discrete and ongoing Section 525(a) violation that has crystallized into present-tense harm.

**K. The Discovery Asymmetry**

51. OOC has produced approximately 330 megabytes of cannabis-related communications to Plaintiff's principal creditor and to that creditor's counsel in the related adversary proceeding (AP 24-03023-DM). The production was made in response to a subpoena served by Plaintiff's adversary.

52. OOC has produced a smaller volume of materials to Plaintiff. Deputy City Attorney Jana Clark has acknowledged on the record that OOC's production to Plaintiff did not fully respond to Plaintiff's Sunshine Act request. The City has not produced the internal communications identifying the "City partners" referenced in OOC's January 28, 2026 email. The City has not produced the internal decision memos authorizing the May 13, 2025 hold imposition, the November 6, 2025 portability rejection, or the January 23, 2026 19 Maiden Lane denial. The City has not produced communications between OOC and the offices of the City Attorney, the Mayor, or any Board of Supervisors member concerning Plaintiff's applications. At the pleading stage, the documents identifying the operative cause of the City's conduct are within the City's exclusive possession. Inferences run in Plaintiff's favor where the moving party seeks

Case No. 24-30082

dismissal on a factual reframing while withholding the documents that would substantiate or refute the reframing.

**L. Damages**

53. The City's conduct has caused Plaintiff substantial and continuing damages. The damages are not abstract or speculative. They are crystallized, ongoing, and rooted in identifiable transactions, documented expenses, and lost opportunities. The City's Motion to Dismiss at Section C contends that Plaintiff's claim is "premature" because his applications have not been finally decided. The contention addresses only one category of harm. Several categories of damages have already crystallized as of the date of this First Amended Complaint and are not contingent on any future application outcome.

54. Permanent extinguishment of the 19 Maiden Lane entitlement. Plaintiff lost a regulatory position he had pursued for more than two years. The denial issued on January 23, 2026. The 19 Maiden Lane position cannot be recovered or replicated. Cannabis retail entitlements in San Francisco are non-fungible: each is tied to a specific equity applicant, a specific location, and a specific position in the OOC processing queue. The damage is crystallized. Comparable San Francisco cannabis equity dispensary transactions have closed at material values, with public equity-dispensary put options and equity sales documented in the multi-million-dollar range, establishing that the lost 19 Maiden Lane entitlement is properly valued in the seven-figure range and is not speculative.

54A. The City's own valuation of the Santos misconduct chain provides an independent documented benchmark for the magnitude of harm at issue. As set forth in paragraphs 12A through 12C above, the City recovered $1,425,044.03 by civil settlement from Rodrigo Santos in compensation for the pattern of permit-inspection misconduct that included the 500-528 Laguna retrofit at the foundation of Plaintiff's bankruptcy. The City's valuation of the Santos damages is identical to within four dollars to the principal proof of claim filed against Plaintiff in his bankruptcy, the financial burden of which OOC's Section 525(a) discrimination has compounded by foreclosing Plaintiff's ability to reestablish operations and resolve the obligations. The Santos-recovery figure is offered here not as a stipulated damages amount but

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 20 of 34

as a documented and adopted City valuation that informs the magnitude of the seven-figure harm at issue and the institutional context in which the City's permitting-side discrimination occurred.

55. Carrying costs at the application locations. Plaintiff incurred and continues to incur lease and lease-related expenses at the locations associated with his pending applications, including 724 Valencia, 542 Laguna, and 928 Van Ness. The hold prevented Plaintiff from operating or monetizing these locations during the hold period. The continued post-hold obstruction continues to prevent processing of routine administrative actions necessary to advance the businesses at these locations. Each month of carrying cost during the affected periods is documented in Plaintiff's records. These costs have already been paid. They are not contingent.

55A. Plaintiff's capital commitment at 724 Valencia. On April 2, 2025, Plaintiff executed and transmitted to OOC the commercial lease at 724 Valencia in reliance on OOC's facilitation of the 724 Valencia application path. Between April 2025 and the present, Plaintiff has incurred lease payments and lease-related expenditures at 724 Valencia while the application has remained frozen or has been subject to the post-April-2 obstruction. These expenditures were made on the permit-application timeline OOC had publicly endorsed before the hold and are irrecoverable regardless of whether the 724 Valencia application is eventually approved or denied. Plaintiff would not have executed the 724 Valencia lease, nor committed the associated capital, had he known that OOC would impose a bankruptcy-based hold on the application path OOC had facilitated. The carrying loss is a crystallized harm that exists independent of the final outcome on the underlying application.

56. Loss of cannabis equity grant funding. Plaintiff's entities have been excluded from cannabis equity grant rounds for which they qualified or would have qualified during the hold period. The Office of Cannabis continues to withhold the conference Plaintiff has requested with the OOC grants team. The damage is not abstract. Cannabis equity grant funds are routinely deployed by recipient operators for operational needs including the renegotiation of commercial lease terms necessary to reopen or sustain operations and the funding of payment plans or offers in compromise resolving outstanding tax obligations with the California

Case No. 24-30082
Adv. Proc. No. 26-03016      FIRST AMENDED COMPLAINT      21

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 21 of 34

Department of Tax and Fee Administration and the Franchise Tax Board. Grant funding also substitutes for the third-party capital that prospective investors have reasonably declined to commit pending resolution of OOC's administrative posture, as set forth in paragraph 47. Each grant round already passed represents a quantifiable, non-contingent loss.

57. Foreseeable exclusion from the cannabis cafe licensing program. The Board of Supervisors introduced legislation on March 16, 2026 to create cannabis cafe permits under California Assembly Bill 1775. The proposed ordinance limits the initial phase to existing cannabis retailers. The City's conduct prevented Plaintiff from achieving existing-retailer status at his pending application locations during the relevant window. The foreseeable result is exclusion from a significant new licensing opportunity that other equity operators will access. The exclusion has already crystallized as of the March 16, 2026 introduction date.

57A. Exclusion from positioning during the federal rescheduling window. The December 18, 2025 executive order directing expedited rescheduling of marijuana from Schedule I to Schedule III, followed by the April 2026 order of the Acting Attorney General rescheduling FDA-approved marijuana products and state-licensed medical marijuana under the 21 U.S.C. Section 811(d)(1) treaty pathway, and the further administrative hearing scheduled in 2026 on the broader rescheduling of all marijuana, constitute the most significant change in federal cannabis policy in over fifty years. The rescheduling process materially affects the regulatory and market value of state-licensed cannabis retail operations, including by lifting Internal Revenue Code Section 280E restrictions on ordinary business deductions for state-licensed cannabis operators. Operators positioned with active retail operations or processed applications during this window have been able to reposition lease terms, capital structures, and operational plans to capture the regulatory and market changes. Plaintiff was unable to capture such positioning because his applications were frozen under the bankruptcy-based hold during the relevant window and remained obstructed under the post-April-2, 2026 City Partner guidance pattern. The differential loss of position during the rescheduling window is a crystallized harm distinct from the underlying loss of the applications themselves.

Case: 26-03016     Doc# 28     Filed: 05/14/26     Entered: 05/14/26 17:09:16     Page 22 of 34

58. Preempted geographic positions under the 600-foot buffer rule. Third-party applicants in geographic competition with Plaintiff's pending applications have been able to advance through the priority queue during the hold period while Plaintiff's applications were frozen. Preemption of specific geographic positions has already occurred and cannot be undone.

59. Consequential litigation costs. Plaintiff has incurred substantial litigation costs in proceedings that would not have been necessary had OOC processed his applications in the ordinary course, including the commercial unlawful detainer action at 724 Valencia (CUD-25-680849) and the related civil action (CGC-26-634089). These costs include filing fees, service costs, professional fees, and the substantial pro per time Plaintiff has devoted to these matters in place of revenue-generating activity. These costs have been incurred.

60. Lost business opportunities and professional reputation harm. During the hold period and the continuing post-hold obstruction, Plaintiff has been unable to pursue cannabis opportunities outside his existing pending applications because his existing applications and entities remained frozen and his ability to credibly commit to new transactions was compromised. Professional reputation harm in regulated industries is a recognized category of damages with established methodologies for valuation.

61. Continuing harm. The damages categories above are not historical. Each continues to accrue as the City maintains the circular Planning-OOC referral pattern at 542 Laguna, withholds processing of the four particularized administrative actions identified above, and obstructs Plaintiff's ability to advance routine administrative requests under the unidentified "City Partner guidance" pattern.

62. Plaintiff seeks compensatory damages in an amount commensurate with the losses Plaintiff has sustained, to be proven at trial through the testimony of experts, the documentary record of Plaintiff's transactions and expenditures, and the comparable-transaction methodologies recognized in the valuation of regulated equity assets and professional reputation in regulated industries.

**M. The Controlling Legal Framework**

Case No. 24-30082

Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT     23

Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 23 of 34

63. Section 525(a) provides that a governmental unit may not "deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, [or] discriminate with respect to such a grant against, a person that is or has been a debtor under this title . . . solely because such bankrupt or debtor is or has been a debtor under this title . . . ." 11 U.S.C. Section 525(a). The statute codified the holding of Perez v. Campbell, 402 U.S. 637 (1971), and reaches all forms of governmental action keyed to bankruptcy status. H.R. Rep. No. 95-595, at 366-67 (1977).

64. The Supreme Court has held that an agency does not escape Section 525(a) by characterizing its action as "regulatory" when the operative cause of the action is the bankruptcy. F.C.C. v. NextWave Personal Communications Inc., 537 U.S. 293, 301-04, 307 (2003). In NextWave, the FCC argued that its cancellation of spectrum licenses was motivated by independent regulatory purposes (auction integrity, orderly administration of the spectrum) rather than by the debtor's bankruptcy. The Supreme Court rejected the argument. Section 525(a), the Court held, is concerned with cause, not motive.

65. The Ninth Circuit Bankruptcy Appellate Panel has applied NextWave directly to the regulatory-motive defense and rejected it. In re Wike, 660 B.R. 683 (B.A.P. 9th Cir. 2024), aff'd, No. 24-4402 (9th Cir. July 31, 2025). The BAP held that "under binding Supreme Court authority, a governmental entity's regulatory motive is not a relevant consideration for purposes of Section 525(a) and, as a result, cannot serve as a basis for denial of a claim under the statute." 660 B.R. at 694-95. The Ninth Circuit affirmed in July 2025. The City's Motion to Dismiss does not cite Wike. The Motion's central theory, that Section 1606(c)(1)'s 100-percent-ownership requirement supplies an independent, non-bankruptcy rationale that defeats the "solely" element of Section 525(a), is the precise defense Wike forecloses.

66. The pre-NextWave decisions cited in the City's Motion (In re Christmas, 102 B.R. 447 (Bankr. D. Md. 1989), In re Helms, 46 B.R. 150 (Bankr. E.D. Mo. 1985), In re Nat'l Cattle Cong., 179 B.R. 588 (Bankr. N.D. Iowa 1995), Matter of Spaulding, 116 B.R. 567 (Bankr. S.D. Ohio 1990), Matter of Rose, 23 B.R. 662 (Bankr. D. Conn. 1982), and In re Graham, 85 B.R. 713 (Bankr. D.N.J. 1988)) each predate NextWave and predate the Bankruptcy Appellate

Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 24 of 34

Panel's application of NextWave in Wike. None of those decisions engages NextWave's holding that motive is irrelevant. The "policy of general applicability" formulation in Spaulding and its progeny addresses rules of financial responsibility applied uniformly across regulated populations. Section 1606(c)(1)'s 100-percent-ownership requirement is not such a rule. The City's own contemporaneous conduct, multiple grant agreements with Plaintiff as the 100-percent-controlling principal of Caliverde during the same period the City now claims ownership was uncertain, demonstrates that the rule was not applied uniformly to Plaintiff across his interactions with the City.

67. Section 525(a) is broad in its operative verbs. It reaches denial, revocation, suspension, refusal to renew, conditioning, and discrimination with respect to a grant. The Second Circuit has held that Section 525(a) reaches regulatory actions that fall outside the traditional categories of non-discrimination doctrine, when those actions are keyed to bankruptcy. In re Stoltz, 315 F.3d 80, 90-91 (2d Cir. 2002). The statute does not require the discriminatory action to fit a specific procedural category. It requires only that the operative cause be the debtor's status.

68. On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Hebbe v. Pliler, 627 F.3d 338, 341-42 (9th Cir. 2010). Pro se pleadings are construed liberally. Hebbe, 627 F.3d at 342. The Court does not weigh evidence, resolve credibility disputes, or choose between competing interpretations of ambiguous facts on a motion to dismiss. In re Tracht Gut, LLC, 836 F.3d 1146, 1150-51 (9th Cir. 2016). Where the defendant's preferred reading of a plaintiff's factual allegations would defeat the claim but the plaintiff's reading would sustain it, the plaintiff prevails at the Rule 12(b)(6) stage.

### V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violation of 11 U.S.C. Section 525(a)

### (Against Defendant City and County of San Francisco)

Case No. 24-30082
Adv. Proc. No. 26-03016      FIRST AMENDED COMPLAINT

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 25 of 34      25

69. Plaintiff incorporates by reference the preceding paragraphs.

70. A claim under Section 525(a) requires four elements: (i) the defendant is a governmental unit; (ii) the action affects a license, permit, charter, franchise, or other similar grant; (iii) the defendant denied, revoked, suspended, refused to renew, conditioned, or discriminated with respect to that grant; and (iv) the discriminatory action was undertaken because the plaintiff is or has been a debtor under Title 11. F.C.C. v. NextWave, 537 U.S. at 301-04, 307; In re Wike, 660 B.R. at 694-95. The Complaint pleads each element with documentary specificity.

71. Element One: Governmental Unit. The City is a governmental unit within the meaning of 11 U.S.C. Sections 101(27) and 525(a). The Office of Cannabis, the Planning Department, and the Office of the City Attorney are arms of the City for these purposes.

72. Element Two: License, Permit, or Similar Grant. Plaintiff's cannabis business permit applications, license relocation requests, equity-applicant processing, and cannabis equity grant agreements each constitute a "license, permit, charter, franchise, or other similar grant" within the meaning of Section 525(a).

73. Element Three: Discrimination. The City denied, suspended, conditioned, and discriminated with respect to cannabis business permits, licenses, equity grant agreements, and other similar grants to Plaintiff in three distinct ways. First, the pre-April-2 administrative hold and the 19 Maiden Lane extinguishment: the City imposed an administrative hold on Plaintiff's pending applications from May 13, 2025 through April 2, 2026, denied the 19 Maiden Lane portability application on January 23, 2026 during a window of selective action against Plaintiff's portfolio under cover of the bankruptcy-based hold on parallel applications, continued the hold for more than three months after the December 19, 2025 abandonment order, and refused to initiate the permitting process at new locations during the hold. Second, the post-April-2 withheld administrative actions: the City has withheld processing of Plaintiff's Caliverde DBA change to MotaCity, Plaintiff's Caliverde license relocation request, Plaintiff's capital-partner amendment requests, and the requested conference with the OOC grants team, each as set out in paragraphs 45 through 48 above. Third, the structural obstruction: the City has maintained the circular Planning-OOC referral pattern obstructing merits processing of the

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 26 of 34

542 Laguna application, and has imposed artificial deadline pressure on Caliverde under the same City Partner guidance framework. Each of these three categories falls within the operative verbs of Section 525(a).

74. Element Four: Causation. The discriminatory action was undertaken because Plaintiff is or has been a debtor under Title 11. Three written communications, Dennis (May 13, 2025), Schwartz (February 17, 2026), and Law (March 2, 2026), constitute direct documentary evidence that OOC conditioned the processing of Plaintiff's applications on the existence or resolution of his bankruptcy case. Each communication names the bankruptcy. A fourth communication, OOC's January 28, 2026 email, admits in writing that the hold continues for "guidance from our City partners," an unidentified decision-making body whose identity and basis for action the City has not disclosed. The hold was lifted approximately twenty-four hours after service of the original Complaint.

75. The City's invocation of Police Code Section 1606(c)(1) and the trustee's control of estate property is a litigation-stage re-characterization. It does not appear in any contemporaneous communication. As set forth above, it does not account for the fifteen-month gap between the petition date and the imposition of the hold, the City's own execution of multiple cannabis equity grant agreements with Caliverde during the same period, the post-abandonment continuation of the hold, or the four particularized post-April-2 withheld administrative actions. Uncertainty about which estate-versus-non-estate assets were abandoned in the bankruptcy is itself a bankruptcy-derived uncertainty. The City cannot defeat the "solely" element of Section 525(a) by pointing to a downstream consequence of the bankruptcy filing. NextWave forecloses precisely this move. 537 U.S. at 301-04. Even were the Section 1606(c)(1) rationale documented, contemporaneous, and consistent, and it is none of those, it would not defeat the Section 525(a) claim under Wike's no-regulatory-motive holding. 660 B.R. at 694-95.

76. The City's contention that the 19 Maiden Lane denial was for an independent non-bankruptcy reason fails on two grounds. First, the 49 Kearny entitlement on which the denial rests had lapsed under Police Code Section 1608(b)'s 18-month retention period

Case No. 24-30082
Adv. Proc. No. 26-03016      FIRST AMENDED COMPLAINT      27

27
Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 27 of 34

approximately four months before Plaintiff's Letter of Intent. The Notice of Denial applied an entitlement that, under the City's own ordinance, did not exist at the relevant time. Second, the LOD-deadline failure on which the Notice of Denial alternatively relies was rendered self-fulfilling by OOC's bankruptcy-based hold on Plaintiff's other applications. The City's facially neutral citation to Section 1606(c)(7) does not cure a deadline failure caused by the City's bankruptcy-based obstruction of the parallel applications required to satisfy the 600-foot rule.

77. As a direct and proximate result of the City's violation of Section 525(a), Plaintiff has suffered the damages described above, in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief

### (28 U.S.C. Sections 2201, 2202)

78. Plaintiff incorporates by reference the preceding paragraphs.

79. An actual and substantial controversy exists between Plaintiff and the City concerning the legality under 11 U.S.C. Section 525(a) of two distinct sets of conduct: (a) the City's administrative hold of Plaintiff's cannabis equity applications from May 13, 2025 through April 2, 2026, the City's denial of the 19 Maiden Lane application on January 23, 2026, and related conduct during the hold period; and (b) the City's continuing post-April-2 obstruction of Plaintiff's pending applications and administrative requests, including the particularized withheld actions identified above and the circular Planning-OOC referral pattern at 542 Laguna. The controversy is concrete and specific. It satisfies the standard articulated in Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937), and Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

80. The City's lifting of the administrative hold on April 2, 2026, twenty-four hours after service of this action, was voluntary cessation undertaken after suit was filed. Voluntary cessation does not moot a controversy unless the defendant meets the "formidable" burden of showing it is "absolutely clear that the allegedly wrongful behavior could not reasonably be

Case No. 24-30082

Adv. Proc. No. 26-03016      FIRST AMENDED COMPLAINT

28

Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 28 of 34

expected to recur." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000). The City does not meet that burden. The City defends the legal position in its Motion to Dismiss. The post-April-2 conduct demonstrates that the City has resumed the obstruction under a different administrative label.

81. Plaintiff is entitled to a declaration that: (a) the City's administrative hold of Plaintiff's cannabis equity applications from May 13, 2025 through April 2, 2026 violated 11 U.S.C. Section 525(a); (b) the City's conditioning of permit processing on the existence or resolution of Plaintiff's bankruptcy case violated 11 U.S.C. Section 525(a); (c) the City's denial of the 19 Maiden Lane application on January 23, 2026 violated 11 U.S.C. Section 525(a); (d) the City's continuing post-April-2 obstruction of Plaintiff's pending applications under the "City Partner guidance" framework violates 11 U.S.C. Section 525(a); and (e) Plaintiff is entitled to have all current and future cannabis equity applications, license relocation requests, grant agreements, capital structure amendments, and related administrative requests processed without regard to his current or former status as a debtor under Title 11.

### THIRD CLAIM FOR RELIEF

### Structural Relief Directing the City to Adopt and Publish

### a Written Section 525(a) Policy

### (11 U.S.C. Section 525(a); 11 U.S.C. Section 105(a); 28 U.S.C. Sections 2201, 2202)

82. Plaintiff incorporates by reference the preceding paragraphs.

83. Section 525(a) is a remedial statute. Its purpose is to ensure that governmental units treat present and former debtors without discrimination based on bankruptcy status. Where a governmental unit's pattern of conduct demonstrates a sustained risk of non-compliance, the Court's authority to grant relief on a Section 525(a) violation reaches the institutional pattern, not merely the individual transaction. This Court's authority to issue structural relief here rests on three sources: (i) the remedial scope of Section 525(a) itself, see In re Stoltz, 315 F.3d 80, 90-91 (2d Cir. 2002) (broad operative scope of Section 525(a)); (ii) 11 U.S.C. Section 105(a), which empowers this Court to issue any order necessary or appropriate to carry out the

Case No. 24-30082

Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT                                    29

Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 29 of 34

provisions of Title 11 in conjunction with a substantive provision of the Code; and (iii) the declaratory judgment statute, 28 U.S.C. Sections 2201 and 2202, which authorizes further necessary or proper relief based on a declaratory judgment. The structural relief sought here is sought in conjunction with the declaratory relief sought above. It is directed at the City's institutional policy, not at the resolution of any specific pending application. It is different in kind from the personal injunctive relief the Court denied on April 27, 2026.

84. The City's conduct establishes the predicate for structural relief. The City imposed an administrative hold citing the bankruptcy, continued the hold for nearly eleven months, documented the bankruptcy as the cause in three written communications by three separate officials, and lifted the hold within twenty-four hours of service of this action. The City has adopted a litigation-stage re-characterization of its conduct. The City has resumed obstruction under a different administrative label. The pattern reveals an institutional gap: the City has no published policy governing the treatment of equity applicants in bankruptcy consistent with Section 525(a). The absence of policy permits ad hoc conduct shielded by retrospective regulatory re-characterization. The institutional capacity to address that absence exists. The City has demonstrated, through its civil enforcement action against Santos and through its parallel programs of regulatory remediation, the capacity to articulate institutional standards, recover funds in connection with documented misconduct, and direct remedial action across departments. The remedy sought here asks the Court to direct the application of that same institutional capacity to OOC's treatment of equity applicants who are or have been debtors under Title 11.

85. Plaintiff is entitled to an order directing the City to develop and publish, within a defined period, a written policy governing the treatment of equity applicants who are or have been debtors under Title 11. The policy must comply with Section 525(a). At minimum, the policy must provide that: (a) equity applications held by debtors during the pendency of bankruptcy proceedings shall be held in administrative abeyance without prejudice, with no extinguishment based on bankruptcy-derived conditions; (b) the underlying regulatory clock shall be stopped during the bankruptcy period; (c) reinstatement to the same regulatory position

Case No. 24-30082
Adv. Proc. No. 26-03016    FIRST AMENDED COMPLAINT

30

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 30 of 34

shall occur upon discharge, abandonment, or other resolution of the bankruptcy; and (d) routine administrative actions (license relocation, DBA changes, capital structure amendments compliant with Section 1604(b)(3), grants conferences) shall be processed according to published criteria applied to all applicants without distinction based on bankruptcy status.

86. Plaintiff further seeks retention of jurisdiction by this Court over the City's administration of equity applicants in bankruptcy for an appropriate period following entry of judgment, to oversee compliance and to address violations.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Compensatory damages against Defendant City and County of San Francisco for the categories of harm identified in this First Amended Complaint, including: (i) the permanent extinguishment of the 19 Maiden Lane entitlement; (ii) carrying costs at the application locations; (iii) the capital commitment at 724 Valencia; (iv) loss of cannabis equity grant funding; (v) foreseeable exclusion from the cannabis cafe licensing program; (vi) exclusion from positioning during the federal rescheduling window; (vii) preempted geographic positions under the 600-foot buffer rule; (viii) consequential litigation costs; and (ix) lost business opportunities and professional reputation harm; in an amount to be proven at trial;

B. Declaratory relief that the City's administrative hold of Plaintiff's cannabis equity applications from May 13, 2025 through April 2, 2026, the City's denial of the 19 Maiden Lane application on January 23, 2026, and related conduct during the hold period violated 11 U.S.C. Section 525(a);

C. Declaratory relief that the City's continuing post-April-2, 2026 obstruction of Plaintiff's pending applications and administrative requests, including the four particularized withheld actions and the circular Planning-OOC referral pattern at 542 Laguna, violates 11 U.S.C. Section 525(a);

D. Structural relief under 11 U.S.C. Section 525(a), 11 U.S.C. Section 105(a), and 28 U.S.C. Sections 2201 and 2202 ordering the City to develop and publish, within a defined period, a written policy governing the treatment of equity applicants who are or have been debtors under

Case No. 24-30082
Adv. Proc. No. 26-03016        FIRST AMENDED COMPLAINT        31

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 31 of 34

Title 11, consistent with 11 U.S.C. Section 525(a);

E. Retention of jurisdiction by this Court for an appropriate period following entry of judgment to oversee compliance with the structural relief and to address violations;

F. Prejudgment and post-judgment interest as permitted by law;

G. Costs of suit, including reasonable attorney fees to the extent authorized by law; and

H. Such other and further relief as the Court deems just and proper.

DATED: May 14, 2026

CHRISTOPHER MICHAEL CALLAWAY

Plaintiff, In Pro Per

Case No. 24-30082

Adv. Proc. No. 26-03016     FIRST AMENDED COMPLAINT     32

**CHRISTOPHER MICHAEL CALLAWAY**
2489 15th Street
San Francisco, California 94114
Telephone: (415) 802-6160
Email: chris1callaway@gmail.com
In Pro Per

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: | **Case No. 24-30082** |
| | **Chapter 7** |
| CHRISTOPHER MICHAEL CALLAWAY, | |
| Debtor. | **Adv. Proc. No. 26-03016** |
| | |
| CHRISTOPHER MICHAEL CALLAWAY, | **CERTIFICATE OF SERVICE** |
| | **RE: FIRST AMENDED** |
| Plaintiff, | **COMPLAINT** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant. | |

**CERTIFICATE OF SERVICE**

I, Christopher Michael Callaway, am the Plaintiff in the above-captioned adversary proceeding, am over the age of eighteen and not a party adverse to myself, and reside at 2489 15th Street,

Case: 26-03016    Doc# 28    Filed: 05/14/26    Entered: 05/14/26 17:09:16    Page 33 of 34

San Francisco, California 94114.

On May 14, 2026, I served the foregoing FIRST AMENDED COMPLAINT FOR VIOLATION OF 11 U.S.C. SECTION 525(a); DAMAGES; DECLARATORY AND STRUCTURAL RELIEF on the following parties by the methods indicated:

BY THE COURT'S CM/ECF NOTICE OF ELECTRONIC FILING: All parties registered to receive electronic notice in this adversary proceeding, including counsel for the City and County of San Francisco.

BY ELECTRONIC MAIL:

Melissa B. Boey, Esq., Morgan, Lewis & Bockius LLP, Counsel for Defendant City and County of San Francisco, melissa.boey@morganlewis.com

Jana K. Clark, Deputy City Attorney, Office of the City Attorney, jana.clark@sfcityatty.org

Elizabeth A. Coolbrith, Deputy City Attorney, Office of the City Attorney, elizabeth.coolbrith@sfcityatty.org

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 14, 2026 at San Francisco, California.

CHRISTOPHER MICHAEL CALLAWAY

Plaintiff, In Pro Per

Case No. 24-30082

Adv. Proc. No. 26-03016        CERTIFICATE OF SERVICE

Case: 26-03016   Doc# 28   Filed: 05/14/26   Entered: 05/14/26 17:09:16   Page 34 of 34